Edmunds v. Deppen.

CASE 92—PETITION ORDINARY—JUNE 6.

# Edmunds v. Deppen.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

VENDOR AND VENDEE—WARRANTY.—Where the original vendor of a city lot by the contract with his vendee reserved a building on the lot which belonged to a lessee, and the vendee, who afterward resold the lot at a profit without excepting the building, procured the original vendor to make a deed of general warranty directly to the purchaser, knowing that the deed.did not contain a reservation of the building, the original vendor having been compelled under his covenants of warranty to pay to the grantee the value of. the building, which was removed by the lessee, is entitled in this action against his vendee to recover the amount so paid together with reasonable counsel fees, the warranty of the appurtenances being embraced in the deed for the purpose of carrying out the contract made by the defendant with the grantee, the plaintiff, by his contract with defendant, expressly refusing to make such a warranty.

B. F. BUCKNER FOR APPELLANT.

1. The intention and purpose with which the annexation is made will determine whether it becomes a part of the freehold or not. In this case the annexation was made with a temporary purpose, with no intention of benefiting the freehold, but upon the contrary under a contract of removal. Therefore, these improvements so called were never immovable fixtures but remained and were personal property and did not pass by the deed of Deppen to Russell & Bright. (Kent's Com., 402; Taylor's Landlord and Tenant, sec. 550; Tillman v. De Lacy, 80 Ala., 103; Hunt v. Potter, 47 Mich., 197; Hellawell v. Eastwood, 6 Exch., 309; 8 Am. & Eng. Enc. of Law, 43; Teaff v. Hewitt, 1 Ohio St., 511; Hill v. Sewald, 53 Pa. St., 271; Seeger v. Pettet, 77 Pa. St.; Allen v.

Edmunds v. Deppen.

Mooney, 130 Mass., 155; Wheeler v. Bedell, 40 Mich., and cases there cited; Saint v. Pilley, 10 Exch. (L. R.), 137; *In re* Moser, 13 Q. B. D. (L. R.), 738; *Ex parte* Glegg, 19 Chan. Div. (L. R.), 7; Morris' Appeal, 88 Pa. St., 369; Hunt v. Mullanphy, 1 Mo., 508; Laird v. Railroad, 13 Am. St. Rep., 564; Hutchins v. Masterson, 46 Texas; Rogers v. Crow, 40 Mo., 91; Crane v. Brigham, 11 N. J. Eq., 35; Potter v. Cromwell, 100 Am. Dec., 491; Thomas v. Crout, 5 Bush, 37; Davis v. Eastham, 81 Ky., 116.)

2. Even if the annexations were a part of the realty they passed to the vendee, and the payment of the money by Deppen to Russell & Bright could not possibly have been in discharge of any legal liability.

3. Whether a particular article is a fixture or not is a mixed ques- tion of law and fact and should have been left to the jury under proper instructions. (Tillman v. De Lacy, 80 Ala., 103; Allen v. Mooney, 130, Mass. 155; Leonard v. Stickney, 131 Mass., 541; Campbell v. O'Neill, 64 Pa. St., 290; Grand Lodge v. Knox, 27 Mo., 315.)

4. A fraud is never imputed from mere silence unless the party in question was under a legal obligation to speak with reference to the matter at issue. (8 Am. & Eng. Enc. of Law, p. 644; 2 Pome- roy's Eq. Jur., secs. 902-904.)

HUMPHREY & DAVIE for appellee.

1. Deppen having signed a deed, at Edmunds' request, conveying the land to Russell & Bright (who were Edmunds' vendees); and the deed being so worded, by Edmunds, as to make Deppen liable for the failure of title to the improvements on the land; there was an implied agreement on the part of Edmunds to indemnify Deppen against any loss he might thereby incur. (Bibb v. Allen, 149 U. S., 499; Dugdale v. Lovering, Law Rep., 10 Com. Pleas, 196; Curtis v. Fidler, 2 Black, 478; Dupuy v. Johnson, 1 Bibb, 564.)

2. When an act is done by the plaintiff at the request and for the bene- fit of defendant, and the doing the act has rendered the plaintiff liable to a third person, and that third person has enforced that liability against plaintiff; plaintiff is entitled to be indemnified by the defendant at whose request he did the act; and the law will imply an agreement to so indemnify. This rule is a gen- eral one, and is not confined to cases of principal and agent. (Dugdale v. Lovering, Law Rep., 10 Com. Pleas, 196.)

3. The conveyance of the land with a covenant of general warranty, which Edmunds procured Deppen to sign, was a warranty that the improvements on the land would pass with the land and be- long to the vendee; and, as the improvements did not in fact pass with the land, but were owned and removed by the Barber

Asphalt Company, there was an immediate breach of the cove-
nant, which rendered Deppen, at once, legally liable to the
vendees for the value of the improvements.  (Mott v. Palmer, 1
Comstock, 564; Van Waggoner v. Van Nostrand, 19 Ia., 422; Bar-
low v. McKinley, 24 Ia., 69 ;Burcher v. Parker, 43 Mo., 443.)

JUDGE GRACE DELIVERED THE OPINION OF THE COURT.

This is an appeal by Sterling E. Edmunds from a judg-
ment rendered against him by the Jefferson Court of Com-
mon Pleas, in favor of J. L. Deppen, Jr., for two hundred
dollars.

The contest arises out of the following real estate trans-
action, viz:   That on the 21st day of March, 1887, Deppen,
who was the owner of a certain lot of ground in the city of
Louisville, on the east side of Third street, gave an option
or authority to Buchanan Bros. to sell said lot.   This was
in writing and reads as follows:

Louisville, Ky., March 21, 1887.

"Messrs. Buchanan Bros.:   I hereby authorize you to sell
my Third-street lot, south of Shipp street, fronting 105 feet,
for fifty dollars per foot.   Improvements do not go with
lot.   This offer to hold good till to-morrow, March 22d, till
3 p. m.

"(Signed )        J. L. Deppen, Jr."

"I accept the foregoing proposition, said lot being situ-
ated on the east side of Third street, beginning 52½ feet
north of Hill street and running northwardly on Third
street one hundred and five feet, total price, fifty-two hun-
dred and fifty dollars.   Terms one-third cash, remainder in
one and two years, with 6 per cent. interest and lien.

"(Signed)            S. E. Edmunds."

"I approve the above.              (Signed)

"J. L. Deppen, Jr."

March 21, 1887.

It appears that on the same day of his purchase of this lot, S. E. Edmunds placed same in the hands of the same firm, Buchanan Bros., to sell for him, and that on that day or the next, Buchanan Bros. had some conversation with John C. Russell, in reference to a sale of this lot to him, and that on the 23d day of March, Edmunds and Russell being brought together by reason of this agency, Edmunds sold this lot to Russell as evidenced by this paper.

"Louisville, Ky., March 23, 1887.

"I have, this day, purchased of Sterling E. Edmunds, his lot purchased of J. L. Deppen, Jr., of 105x190 feet, on the east side of Third street, between Hill and Shipp avenues, the terms $3,700 cash; balance in two notes of one and two years at 6 per cent interest.          (Signed)

"J. C. Russell."

It will be observed that the full consideration to be paid in this sale is omitted, by mistake. It was at $70 per foot front, and no disagreement arises on this point. It appears that before the date of these sales, Deppen had leased this vacant lot of ground to the Barber Asphalt Co., which lease did not expire until May following, and that company had put up a temporary rough building or structure, the lower part built of brick and the upper portion of wood. That upon this brick foundation the lessee had placed its boiler, or iron tub or tank, used in melting and mixing the asphalt, used by it in construction of Third and possibly some other street. That a shed extended out some distance from or around this tub or tank to shelter and protect the material used, and that by the terms of the lease the Barber Asphalt Co. had the right to remove this structure and trade attachments from the premises at any time within their lease, and this is the structure referred to by Deppen in his op-

tion to Buchanan, where he says: "Improvements do not go with the lot," the same under which Edmunds bought.

It further appears in the evidence that during the negotiation of this sale by Edmunds to Russell, this structure or building was pointed out, mentioned and discussed, the parties differing somewhat as to the exact language used, though Russell insists that Edmunds extolled its value and expressed the opinion that same could be sold for a considerable little sum of money and that it added to the price and value of the lot, while Russell concedes that he attached but little importance to it, and insisted that it was of little value, and that he might have to employ and pay some one to remove same, that as it then stood on the property it was an eyesore, etc.

At any rate both parties agree that it was not excepted in the sale by Edmunds to Russell, nor does either party affirm, in any manner, that Russell or Bright (who it finally develops was Russell's partner in this purchase) had any knowledge of this lease by Deppen to the Barber Asphalt Co., or that it had erected this structure, or that it had any right to remove same from the lot so sold by Edmunds to Russell. Russell and Bright deny all knowledge on this matter, though expressly reserved by Deppen in his sale to Edmunds. Soon after this sale by Edmunds to Russell, which it will be observed was made at an advance of $2,100 over the price that Edmunds was to pay Deppen for same, it occurred to Edmunds to state this re-sale to Deppen, and to inquire of Deppen whether he would not as soon make his deed directly to Russell as to him, Edmunds, taking Russell's notes for the deferred payments. Deppen said certainly, that he knew Mr. Russell very well, and so he got his money he did not care.

This matter was also understood with Russell and Ed-

munds, and they agreed that Russell should pay in cash to
Edmunds his profit of $2,100 in this lot, and then make the
cash payment and execute his note to Deppen for the con-
sideration or purchase price at which Edmunds had bought
of Deppen.

So the 30th of March was fixed for a meeting of all par-
ties to consummate this transaction, and at this meeting it
seems that the Buchanans (a younger man and not a mem-
ber of the firm), being interested in Edmunds' profit, had
prepared a deed from Deppen and wife to Russell for this
lot, fixing the cash payment to Deppen and the time notes,
with lien retained, all as by the sale of Deppen to Edmunds.
That Deppen supposing, as he says, the deed was all right
and contained the reservation of this building or structure
owned by Barber Asphalt Co., as reserved in his sale to
Edmunds, signed and delivered this deed, only examining
the boundary or description of the lot and not noticing that
there was no exception in the deed.   Deppen says he signed
this deed at the instance of Edmunds, as indeed he must.

Some time after this Russell and Bright sell the building
and structure to one George Hoertz for two hundred and
fifty dollars, and Hoertz, working some two days in tearing
down same was discovered by the Barber Asphalt Co., who
ousted Hoertz and proceeded themselves to remove this build-
ing and the material, and so Russell and Bright lost this
sale.   And complaining to Edmunds, he denies any and all
responsibility, and complaining to Deppen, Deppen says:
"I reserved this in my sale to Edmunds and he understood
all about it."

Russell, however, insists on the general warranty in the
deed of Deppen to him, of this property, and the clauses
passing all appurtenances, and to the covenants by Deppen
that he is lawfully seized in fee simple, that he had full

right and power to convey the same, and that said property is free from all incumbrances. After some controversy on this matter, Deppen recognizing his liability, under the covenants in his deed to Russell, paid him $150 in satisfaction of this claim, and Edmunds refusing to reimburse him and denying his responsibility, Deppen filed this suit.

Issue was formed on the material allegations made by Deppen. A jury trial was had, on which the court instructed the jury:

1. "That if the jury believe from the evidence that the defendant induced the plaintiff to convey the land mentioned in the petition, to Russell and Bright, and that the defendant knew the deed conveying said property did not except therefrom the structure or improvement upon the land conveyed, then the law is for plaintiff and the jury should award him such a sum in damages as they believe from the evidence the plaintiff was compelled to pay Russell and Bright on account of said improvements, not exceeding their reasonable value and not more than one hundred and fifty dollars, and for any reasonable sum he may become bound for, as counsel fees, because of such conveyance, not exceeding the further sum of fifty dollars.

2. "But if the jury believe from the evidence that the defendant did not know that the deed from plaintiff to Russell and Bright did not except therefrom the structure upon the lot conveyed, and that he did not prevent the plaintiff from examining the deed and learning its contents, then the law is for the defendant and the jury should so find." The jury found for plaintiff in the sum of two hundred dollars.

We are of the opinion that the instructions embrace a correct principle of law, and that the evidence authorized the finding of fact in favor of plaintiff. It is clear that this

building was excepted by the sale of Deppen to Edmunds, as it is equally clear not only that it was not excepted in the sale of Edmunds to Russell and Bright, but that its existence was distinctly pointed out and relied on by both parties to this last sale, and clearly understood and recognized by both Edmunds and Russell as being a part of the property sold, and to be conveyed by Edmunds to Russell. And in this view of the case the court has thought it wholly unnecessary to go into an examination of the principle, or the many learned authorities, defining fixtures movable and immovable, or trade fixtures, and whether, thereunder or thereby, this building would or would not pass under a deed of general warranty of land with all appurtenances belonging to same, and under the other clauses in this deed of Deppen to Russell, assuming that nothing had been said by either party in either sale in reference thereto. We do this because in this case the parties have, by their own express contract, indicated the position of this building and structure; Deppen expressly reserving it and Edmunds, as expressly pointing it out and insisting on its value in his sale to Russell; of course, this matter of fixtures, movable and immovable, being always subject to the express contract of the parties, vendor and vendee.

Now, when Deppen, having reserved or excepted this building in his sale to Edmunds, and only made his deed to Russell, at the instance and for the benefit of Edmunds, he, Deppen, had no right to suppose or to suspect even that there was any other obligation in his deed of warranty than that he had bound himself to make to Edmunds. While Edmunds, on the other hand, knowing that he had made no exception of this property, in his sale to Russell, had no right to suppose that Russell would accept from him

or from Deppen a deed excepting any part of this property he had sold to him, so that no money could be coerced out of Russell, either for himself, Edmunds, or for Deppen, unless Russell obtained a deed for the property he had bought without any reservation or exception whatever. So in this transaction one paper would not answer both purposes, could not fulfill the requirements of both contracts.

The deed was, in fact, made to conform to the contract made between Edmunds and Russell, and on this deed made by Deppen, Edmunds secured his full profit in his sale to Russell, and so this deed was not only made at his instance, but contained, as afterwards discovered by Deppen, clauses of warranty inconsistent with and in excess of his contract of sale to Edmunds, and this to the damage of Deppen in the sum of two hundred dollars.

This damage he incurred by doing the act that Edmunds requested him to do, and this act resulted in profit to Edmunds. In such a case we think the law, equity and good conscience implies a promise and raises an obligation by Edmunds to repay and save harmless Deppen. This has been secured in the trial below by the court and the jury.

Judgment affirmed.